# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **SENEKA CASTRELL READUS,** | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action Number |
| | ) | **5:16-cv-02060-AKK** |
| **HMR VETERAN SERVICES,** *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Seneka Castrell Readus alleges claims of race discrimination (Count I) and retaliation (Count II) in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e *et seq.* ("Title VII"), against HMR Veteran Services and HMR of Alabama, Inc. (collectively, "HMR"). Doc. 9. Presently before the court is HMR's motion to dismiss, which is fully briefed, docs. 10; 14; and 15, and ripe for review.[1] For the reasons stated below, the motion is due to be granted solely as to Count I.

## I. STANDARD OF REVIEW

Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." "[T]he pleading standard Rule 8 announces does not require 'detailed factual

---

[1] Readus's motion for extension, doc. 13, and HMR's motion to stay, doc. 16, are **MOOT**.

allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" are insufficient. *Iqbal*, 556 U.S. at 678 (citations and internal quotation marks omitted). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (citing *Twombly*, 550 U.S. at 557).

Federal Rule of Civil Procedure 12(b)(6) permits dismissal when a complaint fails to state a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 556 U.S. at 678 (citations and internal quotation marks omitted). A complaint states a facially plausible claim for relief "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citation omitted). The complaint must establish "more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level."). Ultimately, this inquiry is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

## II.    RELEVANT FACTS[2]

Readus, who is African-American, worked for HMR as a nursing supervisor. Doc. 9 at 3–4.  At issue here are remarks made by the Director of Nursing, Troy Roeck, including a reference to Readus's children as "little monkeys" when he invited Readus's family to his home for a social visit, and a false statement "that [Readus] was a single parent with three children." *Id.* at 4.  Shortly after Readus complained to HMR's corporate office about the remarks, Roeck and Administrator Belinda Schrimsher purportedly "took away [Readus's] onshift privileges." *Id.* at 5.  Readus alleges that she has "suffered great mental and emotional anguish due to [these] actions and had to undergo surgery as a result of the increased stress." *Id.*

## III.    ANALYSIS

In Count I, Readus pleads a claim for race discrimination.[3]  Specifically, Readus contends that HMR discriminated against her by revoking her half shift

---

[2] The plaintiff's allegations are presumed true for purposes of Fed. R. Civ. P. 12(b)(6). *See Grossman v. Nationsbank, N.A.*, 225 F.3d 1228, 1231 (11th Cir. 2000) (quoting *GSW, Inc. v. Long Cnty.*, 999 F.2d 1508, 1510 (11th Cir. 1993)) ("When considering a motion to dismiss, all facts set forth in the plaintiff's complaint 'are to be accepted as true and the court limits its consideration to the pleadings and exhibits attached thereto.'").

[3] Although Readus characterized Count I in the amended complaint as one based on a "racially discriminatory work environment," *see* doc. 9 at 5, and provided argument in her response brief appearing to support a hostile environment claim, *see, e.g.*, doc. 14 at 10 ("Roeck's statement was racially derogatory harassment, which was severe and pervasive."), Readus claims nonetheless that "Plaintiff's race discrimination claim is clearly one of racial discrimination in Plaintiff's workplace, and not a hostile work environment claim," *see id.* at 12.

and onshift privileges after she complained about what she perceived as Roeck's racially discriminatory remarks. Doc. 9 at 5. To succeed on a disparate treatment claim, Readus must show that she belongs to a protected class, was qualified, suffered an adverse employment action, and that HMR treated a similarly situated employee outside of her protected class more favorably. *See Flowers v. Troup Cty. Sch. Dist.*, 803 F.3d 1327, 1336 (11th Cir. 2015). In an attempt to make this showing, Readus contends in her brief that she "suffered adverse employment action by being mistreated severely to the point of having to undergo surgery due to the severe stress brought on by the events during her tenure [with HMR]." Doc. 14 at 6.[4] The court cannot, however, consider this or other allegations in her brief because the "scope of review [of a motion to dismiss] must be limited to the four corners of the complaint." *Speaker v. U.S. Dept. of Health and Human Servs. Ctrs. for Disease Control and Prevention*, 623 F.3d 1371, 1379 (11th Cir. 2010).

Based on the amended complaint, the only adverse employment action Readus alleges is that HMR denied her onshift and half shift privileges. Doc. 9 at 6. Moreover, to show purported disparate treatment, she alleges that "[o]ther RN Supervisors who did not complain about discrimination have not had their onshift

---

In light of Readus's clear statement that she is not pursuing a hostile environment claim, the court will analyze solely the disparate treatment construction of the claim.

[4] Readus also states in her brief that she was "no longer assisted by her supervisors as she was informed that she could not ask them for assistance after she complained and her onshift privileges were taken away." Doc. 14 at 6.

4

and half shift privileges taken away." *Id.* These contentions, however, fall short of alleging an adverse action or disparate treatment based on race.

For example, although Readus states the loss of onshift and half shift privileges, she does not specify the economic loss, if any, or loss of employment rank or status due to these actions. "Although an adverse employment action need not be an ultimate employment decision, such as termination, failure to hire or demotion, it must meet a 'threshold level of substantiality.'" *Grimsley v. Marshalls of MA, Inc.*, 284 F. App'x 604, 608 (11th Cir. 2008) (quoting *Davis v. Town of Lake Park*, 245 F.3d 1232, 1238–39 (11th Cir. 2001)). Stated differently, "[a]lthough evidence of 'direct economic consequences' is not always required, 'to prove adverse employment action in a case under Title VII's anti-discrimination clause, an employee must show a *serious and material* change in the terms, conditions or privileges of employment.'" *Grimsley*, 284 F. App'x at 608 (quoting *Davis*, 245 F.3d at 1238–39) (emphasis in *Grimsley*). No such showing is made in the amended complaint. Moreover, Readus does not indicate whether the "other RN Supervisors who did not complain about discrimination [and who] have not had their onshift and half shift privileges taken away," doc. 9 at 6, are individuals outside of her protected class.[5] Put simply, as currently pleaded — and in the

---

[5] Readus's opposition brief identifies Kim Gordon and Sabrina Reed as "two similarly situated Caucasians outside of [her] protected class who were treated more favorably." Doc. 14

5

proposed amendment,[6] the allegations do not rise to an adverse action and do not establish that Readus was treated differently than persons outside of her protected class. Therefore, the disparate treatment claim (Count I) is due to be dismissed without prejudice.

Transitioning now to Count II, Readus alleges that HMR retaliated against her after she complained about the "little monkeys" comment by telling her that she could "no longer work half shifts" and that "she could no longer contact [them] about issues with the facility and that she should be able to handle issues at night on her own." Doc. 9 at 6–7. HMR argues that Readus's complaint about the "little monkeys" remark was not protected activity,[7] because Readus's belief that the remark was racially discriminatory was "objectively unreasonable." Doc. 10 at 17

---

at 14. However, the "scope of review [of a motion to dismiss] must be limited to the four corners of the complaint," *Speaker*, 623 F.3d at 1379.

[6] Readus filed a motion for leave to amend after the completion of the briefing of the motion to dismiss. Doc. 17. The proposed amendment does not address any of the deficiencies cited here that warrant the dismissal of her disparate treatment claim. Moreover, the new allegations — *i.e.*, that HMR altered the "terms and conditions of her employment" by denying her request to transfer to a part time day shift but "allowed Kim Gordon, a caucasian employee, to work the day shift when she returned from medical leave," doc. 17-1 at 6, and that HMR failed to address the "disruptive" and "undermin[ing]" actions of "a caucasian nurse named Sabrina Reed," whom Readus supervised, *see* doc. 17-1 at 16 — as currently pleaded fail to rise to the adverse employment action necessary for a disparate treatment claim. Therefore, to allow Readus one final opportunity to perhaps properly plead a disparate treatment claim, the current motion for leave, doc. 17, is **DENIED** as futile.

[7] "A *prima facie* case of retaliation under Title VII requires the plaintiff to show that: (1) she engaged in an activity protected under Title VII; (2) she suffered an adverse employment action; and (3) there was a causal connection between the protected activity and the adverse employment action." *Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008).

6

(citing *Little v. United Technologies*, 103 F.3d 956, 960 (11th Cir. 1997)) (it is not sufficient for a plaintiff "to allege [her] belief [that the employer was engaged in unlawful employment practices] was honest and bona fide; the allegations and record must also indicate that the belief, though perhaps mistaken, was objectively reasonable"). In light of the long history of the use of the ape slur towards people of African descent,[8] the court respectfully disagrees with HMR that an employee complaining about the alleged remark here, even if mistaken, "is not activity protected by Title VII." Doc. 10 at 17. To the contrary, consistent with *Little*, the history of the slur makes Readus's complaint objectively reasonable. Accordingly, Readus's retaliation claim survives.

## IV.  CONCLUSION AND ORDER

In light of the foregoing, HMR's motion to dismiss, doc. 10, is **GRANTED** as to the disparate treatment claim (Count I), and **DENIED** as to the retaliation claim (Count II). Count I is **DISMISSED WITHOUT PREJUDICE**. The parties

---

[8] *See Jones v. UPS Ground Freight*, 683 F.3d 1283, 1297 (11th Cir. 2012) (quoting *United States v. Jones*, 159 F.3d 969, 977 (6th Cir. 1998)) ("'Given the history of racial stereotypes against African-Americans and the prevalent one of African-Americans as animals or monkeys, it is a reasonable — perhaps even an obvious — conclusion that' the use of monkey imagery is intended as a 'racial insult' where no benign explanation for the imagery appears."). *See also Green v. Franklin Nat'l Bank*, 459 F.3d 903, 911 (8th Cir. 2006) ("To suggest that a human being's physical appearance is essentially a caricature of a jungle beast goes far beyond the mere unflattering; it is degrading and humiliating in the extreme.") (internal quotation marks omitted).

are directed to file their Rule 26(f) report as directed in the Uniform Initial Order, doc. 12 at 1–2.

**DONE** the 27th day of June, 2017.

                                            **ABDUL K. KALLON**
                                        UNITED STATES DISTRICT JUDGE